**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO**

**KENNETH RAY GONZALES,**

    **Plaintiff,**

        **v.**                          **No. CIV 00-0615 BB/RLP**

**ANTHONY TRUJILLO, Individually and
in his official capacity as a Police Officer with
New Mexico State Police Department**

    **Defendant.**

## MEMORANDUM OPINION AND ORDER

THIS MATTER comes before the Court on two Motions to Dismiss filed by Defendant on July 24, 2000 (Docs. 13, 17). The Court has reviewed the motions, the memoranda submitted by the parties, and the relevant authorities and will grant both motions in part and deny both in part.

### I. FACTS AND PROCEDURAL HISTORY

According to the complaint filed in this case, on November 16, 1998, Plaintiff was driving on State Road 522 in Arroyo Hondo when Defendant passed Plaintiff and later pulled Plaintiff over. Defendant ordered Plaintiff out of his vehicle because Defendant claimed Plaintiff was traveling at a high rate of speed. Plaintiff alleges that Defendant verbally and physically assaulted him while he was pulled over on the side of the road. Plaintiff alleges that these events were videotaped by Defendant. Plaintiff further alleges that he feared for his safety and therefore attempted to get away from Defendant by fleeing to his house, where he waited for the police to arrive. Subsequently, Defendant and a Taos County Sheriff Deputy arrived at Plaintiff's house and arrested him and took him to the New Mexico State Police station.

Plaintiff alleges that while they were at the police station, Defendant videotaped himself arguing with Plaintiff and at one point showed him the video of the stop. Plaintiff alleges that Defendant told him that except for the first video, it was Defendant's word against Plaintiff's word as to what happened during the stop.

Plaintiff was charged in Taos Magistrate Court with several felonies and misdemeanors. He was arraigned on these charges on two occasions but the charges were dismissed on January 11, 1999. The State re-filed these charges on January 14, 1999, and on March 26, 1999 filed a *Nolle Prosequi,* stating the charges were being dismissed in order to re-file them later. Subsequently, the State re-filed the misdemeanor charges but not the felony charges. A trial was scheduled for June 22, 1999, but the charges were dismissed by the State before the trial could be held. On July 22, 1999, a Grand Jury indicted Plaintiff on felony and misdemeanor charges. A month later, on August 31, 1999, Plaintiff was arraigned in Taos District Court and was released on his own recognizance.

On January 14, 2000, the State notified Plaintiff that it had lost the videotape of the initial stop and arrest. Plaintiff alleges that Defendant destroyed the videotape because it was incriminating, in that it showed Defendant abusing his authority and violating Plaintiff's rights. On January 21 Judge Sam Sanchez dismissed with prejudice the criminal case filed against Plaintiff.

Plaintiff filed a complaint on May 1, asserting claims pursuant to 42 U.S.C. §1983, alleging violations of the Fourth and Fourteenth Amendments of the United States Constitution as well as state law claims. Defendant has filed two motions to dismiss under Federal Rules of Procedure 12(b)(6) and D.N.M.LR-Civ. 7 on the following grounds: (1) Plaintiff's failure to show that an intentional spoliation of evidence violates clearly established constitutional rights; (2) Plaintiff's failure to show that Section 41-4-12 of the New Mexico Tort Claims Act, N.M. STAT ANN. §41-4-1 *et.*

*seq.*(Michie 2000), waives Defendant's immunity from liability for an intentional spoliation of evidence tort claim; and (3) Plaintiff's failure to state a claim for violation of his due process rights.

## II. STANDARD OF REVIEW

In addressing a motion to dismiss, the issue is whether the plaintiff is entitled to offer evidence to support his or her claims. *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974). A motion to dismiss under Rule 12(b)(6) may not be granted unless the plaintiff can prove no set of facts in support of the claims that would entitle the plaintiff to relief. *Maez v. Mountain State Tel. & Tel.Inc.,*54 F.3d 1488, 1496 (10th Cir. 1995). Courts must accept all well-pled allegations as true and indulge all reasonable inferences in favor of the plaintiff. *Weatherhead v. Globe Int'l, Inc.*, 832 F.2d 1226, 1228 (10th Cir. 1987). The Court will consider Defendant's motions in light of these standards.

## III. DISCUSSION

### A. MOTION TO DISMISS NO. 1:

One claim raised by Plaintiff concerns Defendant's alleged intentional destruction of the videotape of the stop and arrest ("Video I"). Defendant maintains that as a matter of law his alleged intentional spoliation of evidence did not violate Plaintiff's constitutional rights and that even if Plaintiff's allegation are true, Defendant is entitled to the dismissal of Plaintiff's federal and state law intentional spoliation of evidence claims. The Court will address the federal law claims first and then discuss the state law claims.

#### FEDERAL LAW CLAIMS

Plaintiff asserts that Defendant's alleged destruction of Video I violated Plaintiff's Fifth Amendment rights. Plaintiff does not, however, allege that his claims in any way involve federal agencies or officers. As a result, there is no federal action that would trigger a Fifth Amendment Due

3

Process violation. Plaintiff's Fifth Amendment claims are dismissed for a failure to state a claim because Defendant is not a federal official, but a state official. *See Martinez v. Cordova*, 676 F. Supp. 1068, 1069-70 (D. N.M. 1987).

Although Plaintiff's claim fails to trigger a Fifth Amendment Due Process violation, Defendant concedes that Plaintiff may have a claim under the Due Process Clause of the Fourteenth Amendment, which applies to actions of state officials. *See id.* Pursuant to the following discussion, the Court agrees with this concession. The Due Process Clause of the Fourteenth Amendment requires that a State disclose favorable evidence to criminal defendants that is material to guilt or to punishment. *See United States v. Agurs*, 427 U.S. 97 (1976). "A defendant has a constitutionally protected privilege to request and obtain from the prosecution evidence that is either material to the guilt of the defendant or relevant to the punishment to be imposed." *California v. Trombetta*, 467 U.S. 479, 485 (1984). Moreover, the prosecution has a constitutional duty to turn over exculpatory evidence that would raise a reasonable doubt about the defendant's guilt, even if there is no specific request for the information. *Id.* The duty of the State to produce evidence is "limited to evidence that might be expected to play a significant role in the suspect's defense." *Id.* at 488. To meet this standard the "evidence must both possess an exculpatory value that was apparent before the evidence was destroyed, and be of such a nature that the defendant would be unable to obtain comparable evidence by other reasonably available means."*Id.* at 489.

In order to determine whether there was a violation of Plaintiff's Due Process rights under the Fourteenth Amendment, this Court must determine if Video I was evidence that possessed an exculpatory value, and was evidence such that Plaintiff would be unable to obtain comparable evidence by other reasonably available means. In this case, Video I recorded the events that transpired

4

during the initial stop and arrest. If Video I had been available, it could have been presented to the Grand Jury during their proceedings and might have been useful to Plaintiff in his case. Video I, if it depicted the events in the manner Plaintiff claims they occurred, might also have prevented the repeated re-filing of charges against Plaintiff. Thus, Video I of the initial stop and arrest arguably did possess exculpatory value to Plaintiff. Moreover, it would be almost impossible for Plaintiff to obtain comparable evidence. It is unlikely that Plaintiff has access to alternative evidence that would conclusively demonstrate what actually transpired during the initial stop and arrest. There is no other videotape of the incident and no one other than Plaintiff and Defendant was present during the initial stop and arrest. While a video of Plaintiff was taken at the police station and made available to Plaintiff ("Video II"), this videotape did not record the events that center around the dispute.

The difficult task of determining the import of lost evidence was analyzed by the Supreme Court in *Arizona v. Youngblood*, 488 U.S. 51 (1988), *reh'g denied*, 488 U.S. 1051 (1989). After considering how to prove a negative, the Court in *Youngblood* added the additional requirement that "unless a criminal defendant can show bad faith on the part of the police, failure to preserve potential useful evidence does not constitute a denial of due process of law."*Id.* at 58. In this case, there are allegations of bad faith on Defendant's part. Defendant was allegedly asked by the State to produce the videotape but never gave the State a copy. In addition, Defendant acknowledged the importance of Video I by telling Plaintiff it was his word against Plaintiff's as to what actually transpired during the stop and arrest. The Court cannot at this time, at the motion-to-dismiss stage, determine that Plaintiff would be unable to prove a violation of due process resulting from the alleged destruction of Video I.

As noted above, Defendant acknowledges that Plaintiff may have a claim under the Fourteenth Amendment for a due process violation. Despite this concession, Defendant presses his motion to dismiss, arguing that no constitutional claim for "spoliation of evidence" exists. This argument appears to be a matter of semantics. Under certain circumstances, the intentional destruction of evidence could constitute a due process violation. Such intentional destruction is merely one form of spoliation of evidence. The Court will therefore deny this portion of the motion to dismiss because Plaintiff has stated a colorable claim under the Fourteenth Amendment.

### STATE LAW CLAIMS

Plaintiff claims that Defendant's intentional destruction of evidence constituted the state law tort of spoliation of evidence. Defendant responds by pointing out that Section 41-4-12 of the New Mexico Tort Claims Act ("NMTCA") does not waive Defendant's immunity from liability for Plaintiff's intentional spoliation of evidence claim. Defendant argues that the dismissal of Plaintiff's state law claim of intentional spoliation of evidence is proper because the claim is not authorized under the provisions of the NMTCA.

The legislature enacted the NMTCA in response to the judicial abrogation of sovereign immunity and the basic intent of this enactment was to reestablish governmental immunity while creating specific exceptions for which the government could be sued for tort liability. *See Board of County Comm'rs v. Risk Mgt. Div.,* 120 N.M. 178, 899 P.2d 1132 (1995). It is the public policy of New Mexico "that governmental entities and public employees shall only be liable within the limitations of the Tort Claims Act [41-4-1 to 41-4-27 NMSA 1978]. . . ." N.M.STAT.ANN. §41-4-2 (Michie 2000). " A governmental entity and any public employee while acting within the scope of duty

are granted immunity from liability for any tort except as waived . . . ." N.M. STAT. ANN.§41-4-4 (Michie 2000).

The NMTCA is the exclusive remedy against a governmental entity or public employee for any tort for which immunity has been waived under the NMTCA. N.M.STAT. ANN. §41-4-(Michie 2000). "With the adoption of the NMTCA, New Mexico's appellate courts concluded that a cause of action does not exist against the State or government entity unless immunity has been specifically waived." *Ward v. Presbyterian Healthcare Services,* 72 F. Supp. 2d 1285, 1292 (D. N.M. 1999). Under the NMTCA, a court must determine whether immunity has been waived for the claim against the government and/or public employee acting within the scope of their employment and that consent to be sued must be "specifically found within one of the exceptions under the Act." *See Ward*, 72 F. Supp. 2d at 1292.

In the present case, Plaintiff relies on section 41-4-12 of the NMTCA, which waives immunity for "liability for personal injury, bodily injury . . . or property damage resulting from assault, battery, false imprisonment, false arrest, malicious prosecution, abuse of process . . . or deprivation of any rights, privileges or immunities secured by the constitution and the laws of the United States or New Mexico when caused by law enforcement officers while acting within the scope of their duties." Plaintiff appears to contend that his spoliation claim fits within one of these waivers. Plaintiff argues that the New Mexico Supreme Court's recognition of the intentional spoliation of evidence in *Coleman v. Potash*, 120 N.M. 645, 905 P.2d 185 (1995), "is ancillary to traditional torts enumerated in the Tort Claims Act" and that "[i]t cannot be said that the legislature did not intend that the tort of intentional spoliation of evidence be immune."

This Court addressed this issue in *Leyba v. City of Santa Fe*, Civ. No. 97-1186 JP/RLP (D.N.M., 8/5/99). In *Leyba* the City of Santa Fe argued that Leyba's claim for intentional spoliation of evidence should be dismissed because there was no waiver or immunity for claims against governmental entities for intentional spoliation of evidence. This Court concluded that even though the New Mexico Supreme Court recognized the tort of intentional spoliation of evidence in *Coleman v. Eddy Potash, Inc.,* 120 N.M. 645, 905 P.2d 185 (1995), the New Mexico Legislature has declined to waive immunity for this tort under the New Mexico Tort Claims Act. *Id.* at 4. Based on this conclusion, the Court found that the City of Santa Fe was immune from liability for the plaintiff's claim of intentional spoliation of evidence. *Id.* Subsequently, in *Scott v. City of Albuquerque*, Civ. No. 94-0786 WWD/DJS (D.N.M.1994) this Court found that the New Mexico Tort Claims Act did not include a claim for the spoliation of evidence in the list of police actions in section 41-4-12 for which immunity is waived. Thus, the Court found that "Plaintiffs were not deprived of a property right when the 911 tape recording and certain police reports were destroyed" and that "the spoliation claim d[id] not give rise to a separate claim based on 'the deprivation of any rights . . . secured by the constitution and laws of the United States or New Mexico."*Id.*

Based on this Court's precedent, Defendant's motion to dismiss Plaintiff's state-law claim of intentional spoliation of evidence will be granted.

**PRE AND POST JUDGMENT INTEREST:**

Plaintiff has withdrawn his claim for pre and post judgment interest on his state tort claims. Neither party has addressed this issue with respect to the federal claims, and the Court will therefore not discuss that question.

**B.     MOTION TO DISMISS NO. 2:**

Defendant argues that he is entitled to the dismissal of Plaintiff's Fourteenth Amendment excessive force, procedural due process, equal protection, and official capacity claims. The Court will address each claim separately, beginning with the excessive force claim.

**EXCESSIVE FORCE CLAIM:**

Defendant argues that Plaintiff's excessive force claim is not actionable as a matter of law under the Fourteenth Amendment and that the proper analysis is under the Fourth Amendment. Defendant acknowledges that Plaintiff alleged sufficient facts to state claims for excessive force in violation of the Fourth Amendment. The Court agrees that the appropriate analysis is under the Fourth Amendment.

In *Graham v. Connor*, 490 U.S. 386 (1989) the Supreme Court held "that all claims that law enforcement officers have used excessive force--deadly or not--in the course of an arrest, investigatory stop, or other 'seizure' of a free citizen should be analyzed under the Fourth Amendment and its 'reasonableness' standard, rather than under a 'substantive due process' approach." *Id.* at 395. "Under the Fourth Amendment, the question is whether the Defendant's actions were 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to underlying intent or motivation." *Frohmader v. Wayne*, 958 F.2d 1024, 1026 (10th Cir. 1992).

A qualified immunity defense in an excessive force case is limited. *See Kampa v. City of Albuquerque*, Civ. No. 96-1572 LFG/DJS (D.N.M. 1997). "[I]n excessive force cases the substantive inquiry that decides whether the force exerted by police was so excessive that it violated the Fourth Amendment is the same inquiry that decides whether the qualified immunity defense is

available to the government action." *Id*. "Thus, given the common focus on reasonableness and the clearly -established unlawfulness of excessive force, the qualified immunity and excessive force analysis do not differ in any significant respect."*Id*.

Applying these principles and considering the facts and circumstances of the case, the Court finds that there are sufficient allegations of official conduct that constitutes a violation of the objective reasonableness standard. Under the alleged facts, Defendant acted in an assaultive manner even though Defendant was not confronted with violent circumstances or verbal provocation. Defendant, allegedly without provocation, struck Plaintiff in the face and violently pushed Plaintiff even though Plaintiff did not offer any resistance. Therefore, on the present record, the Court cannot say that Defendant's behavior was objectively reasonable as a matter of law.[1] Thus, Plaintiff has stated a viable claim for a violation of the "objectively reasonable" standard and the Court will not dismiss Plaintiff's claim. However, as Defendant requests, this claim will be analyzed under the Fourth Amendment rather than the Fourteenth.

**PROCEDURAL DUE PROCESS CLAIM:**

Defendant argues that as a matter of law, Plaintiff has failed to state a claim for violation of his procedural due process rights with respect to his deprivation-of-liberty claim. Defendant contends that Section 41-4-12 of the New Mexico Tort Claims Act provides Plaintiff with an adequate post-deprivation remedy that satisfies Plaintiff's right to due process.

In procedural due process claims, what is unconstitutional is the deprivation of a constitutionally protected interest without due process of the law. *See Zinermon v. Burch*, 494 U.S.

---

[1]Use of physical force may, of course, be justified if supported by appropriate facts. *See Kraushaar v. Flanigan*, 45 F.3d 1040, 1055 (7th Cir. 1995); *Pride v. Kansas Highway Patrol*, 793 F.Supp. 279, 281-82 (D.Kan. 1992).

113, 125 (1990). In order to determine whether there is a constitutional violation, "it is necessary to ask what process the State provided, and whether it was constitutionally adequate."*Id* at 126. "[T]he court must determine whether the deprivation was 'random,' whether predeprivation due process was impracticable, and whether the state actor was not authorized to take the action that deprived the plaintiff of his liberty.  [I]n order to prove a claim for denial of procedural due process, the plaintiff must plead and prove that a post-deprivation remedy is not available." *Bass v. Robinson*, 167 F.3d 1041,1049-50 (6th Cir. 1999).

In this case, the alleged deprivation of liberty--Defendant's alleged use of excessive force in effecting the arrest--was a random incident and therefore a predeprivation hearing was impracticable. In addition, as Defendant argues, Plaintiff has post-deprivation remedies available to him that would preclude a claim for a denial of procedural due process under the Fourteenth Amendment. In *Hudson v. Palmer*, 468 U.S. 517, 533-536 (1984), the Supreme Court held that there is not a deprivation of property interest in violation of the procedural requirements of the Fourteenth Amendment if a meaningful post-deprivation remedy for this loss is available. In this case, a post-deprivation remedy is available to Plaintiff because he may sue Defendant under section 41-4-12 of the New Mexico Tort Claims Act. Section 41-4-12 provides that immunity "does not apply to liability for personal injury, bodily injury . . . or property damage resulting from assault, battery, false imprisonment, false arrest, malicious prosecution, abuse of process . . . ." N.M. STAT. ANN. §41-4-12 (Michie 2000). Further, Plaintiff did not plead and prove that a post-deprivation remedy is not available. Because there is a post-deprivation remedy available to Plaintiff, the Court will dismiss Plaintiff's procedural due process claim.  *See Hanson v. Hancock County Mem'l Hosp.*, 938 F.Supp. 1419 (N.D. Iowa 1996) (meaningful post-deprivation remedy adequate, so no viable due-process claim).

**EQUAL PROTECTION CLAIM:**

The Court will not address Defendant's arguments concerning an equal protection claim because Plaintiff states he did not intend to raise such a claim.

**OFFICIAL CAPACITY CLAIM:**

Plaintiff has filed a motion to amend his Complaint to raise a claim of a failure to train or supervise, either of which might be adequate to state an official-capacity claim. *See Canton v. Harris*, 489 U.S. 378 (1989)(an inadequate training claim could be the basis for section 1983 liability). The Court will not address Plaintiff's official capacity claim because the parties have not filed any memoranda on this issue with the Court.

**C.   CONCLUSION:**

In sum, the Court dismisses Plaintiff's state law claim for an intentional spoliation of evidence and Plaintiff's claim of a violation of procedural due process under the Fourteenth Amendment. The Court will not dismiss Plaintiff's claim of a violation of due process under the Fourteenth Amendment, based on the alleged destruction of Video I, and similarly will not dismiss Plaintiff's excessive force claim under the Fourth Amendment.

**ORDER**

Based on the foregoing Memorandum Opinion, Defendant's first motion to dismiss (Doc.13) is hereby GRANTED in part and DENIED in part, and Defendant's second motion to dismiss (Doc. 17) is hereby GRANTED in part and DENIED in part.

Dated this 12th day of January, 2001.

*[signature: Bruce D. Black]*
BRUCE D. BLACK
UNITED STATES DISTRICT JUDGE

Attorneys:

For Plaintiff:
Samuel M. Herrera
P.O. Box 2345
Taos, New Mexico 87571

For Defendant:
Luis Robles
French & Associates, P.C.
500 Marquette Ave. N.W.
Suite 600
Albuquerque, New Mexico 87102

David Tourek
Risk Management Division, Legal Bureau
P.O. Drawer 26110
Santa Fe, New Mexico 87502